293 S.E.2d 437

**OHIO VALLEY CONTRACTORS**

v.

**The BOARD OF EDUCATION OF WETZEL COUNTY, Joseph H. Baker & Associates, Etc.**

**Earl Leroy WHITLOCK**

v.

**Barry S. JACKSON, et al., and the Board of Education of Kanawha County, West Virginia.**

Nos. 14907, 15249.

Supreme Court of Appeals of West Virginia.

March 5, 1982.

Rehearing Denied May 27, 1982.

Orville L. Hardman, William B. Richardson, Jr., Parkersburg, for Ohio Valley Contractors.

Smith & Rowe and Larry L. Rowe, Charleston, for Whitlock.

Brennan & Francis and J. S. Francis, New Martinsville, for Bd. of Ed., Wetzel County.

Love, Wise, Robinson & Woodroe, Jo Walton Eaton and John O. Kizer, Charleston, for Jackson, et al.

HARSHBARGER, Justice:

We have consolidated these cases because they require that we reexamine our conclusion in *Boggs v. Board of Education of Clay County*, 161 W.Va. 471, 244 S.E.2d 799 (1978), that county boards of education are entitled to the constitutional immunity

from suit provided to the State in W.Va. Const. art. VI, § 35. Ohio Valley Contractors is a contract claim and Whitlock is a torts case, and both were dismissed by trial courts.

We find that Syllabus Point 3 of *Boggs* [1] was wrong in its conclusion that local school boards have immunity from suit; and it is overruled.

## I.

W.Va.Const. art. VI, § 35 provides:

The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

■ The state and its agencies performing state functions statewide are entitled to this absolute immunity. *Hesse v. State Soil Conservation Committee*, 153 W.Va. 111, 168 S.E.2d 293 (1969). It cannot be waived by the Legislature or the courts. *City of Morgantown v. Ducker*, 153 W.Va. 121, 168 S.E.2d 298 (1969).

"In determining whether a commission or other body or entity created by the state is in truth and effect a part of the state, all of the features or characteristics must be considered and consequently each case must rest upon the provisions of the entity's own creation." *Hope Natural Gas Co. v. West Virginia Turnpike Commission*, 143 W.Va. 913, 928, 105 S.E.2d 630, 639 (1958).

■ Factors to consider are whether the body functions statewide, *Hesse, supra*; whether it does the State's work, *City of Morgantown, supra*; whether it was created by an act of the Legislature, *Woodford v. Glenville State College Housing Corp.*, 159 W.Va. 442, 225 S.E.2d 671

(1976); whether it is subject to local control, *Hesse, supra*, Syllabus Point 3; and its financial dependence on State coffers, *Boggs, supra*, 161 W.Va. at 475, 244 S.E.2d, at 802.

This court denied immunity to the West Virginia Turnpike Commission in *Hope Natural Gas* emphasizing the corporate nature of the entity, its "power to sue and be sued, to hold and acquire property including the right to do so by the exercise of the power of eminent domain." *Id.*, 143 W.Va. at 928, 105 S.E.2d, at 638. In summary, the Court quoted an 1881 case:

We conclude with the thought that morality is just as much to be practiced by the state in its creation and operation of any separate entity for special purposes, whether public or not, as the state demands and expects of its citizens, and the following quotation from the opinion of Judge Johnson in the case of *Tompkins v. Kanawha Board*, supra, 19 W.Va. at pages 263 and 264, is appropriate:

"It seems to me the test is, was there a corporation created charged with a duty and with rights and franchises incident to corporations, among which is the right to sue, without which the corporation would be without vitality, and the corresponding liability to be sued, without which it would be a legalized despot trespassing upon the rights of the citizens, who would be powerless to protect themselves. The State creates no such irresponsible entity. The Legislature never intended, that such corporations should be without legal liability, notwithstanding the State owns its property. * * * It would be against all our ideas of State government, if a corporation created by the State to carry on a work of improvement should not be liable like any other corporation for the damage it inflicted, notwithstanding the State might own the property of

---

1. *Boggs v. Board of Education of Clay County, supra*, Syllabus Point 3:

"County boards of education are instrumentalities of the State of West Virginia, created by statute in furtherance of a State purpose mandated by *W.Va.Const.*, art. 12, § 1, receive sub-

stantial funds from the State, and are under such direct State control and supervision as to bring them within the constitutional immunity from suit of the State of West Virginia established by *W.Va.Const.*, art. 6, § 35."

the corporation. *Sovereignty does not reside in such a corporation. The State cannot delegate her sovereignty.* There is no creature of the State above the law and irresponsible. If this were so, the corporation might deny to certain individuals all benefits to be conferred by the corporation, and yet it being sovereign or representing sovereignty it could not be sued."

*Hope Natural Gas, supra,* 143 W.Va. at 930, 931, 105 S.E.2d, at 640. (Emphasis supplied.)

In *Hesse v. State Soil Conservation Committee, supra,* Judge Caplan wrote for a unanimous Court that the State Soil Conservation Committee was constitutionally immune from suit but a soil conservation district was not. The committee was similar to the State Board of Education, i.e., its members were appointed by the Governor, it was represented by the Attorney General, it functioned statewide. The district had the same local character as a county school board: its authority was within a limited geographic area, its members were required to be residents thereof and were elected locally, it had power to sue and be sued and to obtain land by condemnation.

All of the matters discussed herein, in relation to a soil conservation district, reveal that such a district is local in nature, that its jurisdiction is confined to a specified area of the state and that it has no attributes of a state agency. We are of the opinion, therefore, that such entity is not immune from suit under the provisions of Article VI, Section 35 of the Constitution ....

*Hesse v. State Soil Conservation Committee, supra,* 153 W.Va. at 116, 168 S.E.2d, at 297.

We may consider other expressions of legislative intent (although the Legislature cannot waive immunity, its pronouncements represent attitudes that we may notice). Our Court of Claims Act, allowing claims against the State to be decided by that court, specifically excluded political and local subdivisions of the state, *and county boards of education,* from its listing of "State agencies". Code, 14–2–3.[2]

This exposition by the Legislature is very persuasive to us, upon the pivotal question about whether a government operation is "State of West Virginia" in the constitutional sense.

Education is a statewide concern. W.Va. Const. art. XII, §§ 1, 2, 3, 5, 6 and 7, art. X, §§ 5, 7, 8 and 10; *Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979). Our Legislature has decided that local school boards are an effective vehicle to help provide a thorough and efficient school system. W.Va.Code, 18–5–1, *et seq.; Mason County Board of Education v. State Superintendent of Schools,* 160 W.Va. 348, 234 S.E.2d 321 (1977). They are locally accountable. Code, 18–5–1. Board members must be county residents, Code, 18–5–1a. They are responsible for spending locally generated taxes, W.Va.Const. art. X, §§ 7, 8 and 10, art. XII, §§ 4, 5 and 7; Code, 18–9A–2; *Pauley v. Kelly, supra.* They are represented by county prosecutors, Code, 7–4–1; *State ex rel. Skinner v. County Commission of Jefferson County,* 165 W.Va. 403, 267 S.E.2d 749 (1980), or hired counsel, Code, 18–5–13(11). They are public corporations and "may sue and be sued, plead and be impleaded, contract and be contracted with ... hold and dispose of any real estate or personal property," Code, 18–5–5, and acquire land by condemnation and make improvements thereon, Code, 18–5–8. They may purchase public liability insurance, Code, 18–5–13(13). It is patently ludicrous to posit that boards, authorized by legislation to buy insurance against liability, are not considered by the Legislature to be liable.

■ County boards of education are heavily financially dependent upon the State. Yet, that alone will not justify a conclusion that they are entitled to State immunity. *Boggs, supra,* 161 W.Va. at

2. W.Va.Code, 14–2–3:
"For the purpose of this article:

. . . . .

"State agency" means a state department, board, commission, institution, or other administrative agency of state government: Provided, that a "state agency" shall not be considered to include county courts, county boards of education, municipalities, or any other political or local subdivision of this State regardless of any state aid that might be provided."

475, 244 S.E.2d, at 802. Justice Miller wrote in his *Boggs* dissent:

> From a fiscal standpoint both counties and municipalities depend on the Legislature for funds. The same is true of county boards of education. The fact that they receive the right to obtain funds from legislative enactments of the State does not convert them into a State agency.

*Boggs v. Board of Education of Clay County, supra,* 161 W.Va. at 485, 244 S.E.2d, at 807.

We emphasize that these public corporations are localized in their management and authority. An agency must have statewide authority to be the "alter ego" of the State. *Accord, Moor v. County of Alameda,* 411 U.S. 693, 719–721, 93 S.Ct. 1785, 1800–1801, 36 L.Ed.2d 596, 615–616 (1973), *reh. denied,* 412 U.S. 963, 93 S.Ct. 2999, 37 L.Ed.2d 1012.

All these elements compel our conclusion that boards of education are not entitled to the State's constitutional immunity.

## II.

The doctrine of common law sovereign or governmental immunity is different from that of constitutional immunity, and has been held to protect a governmental body from liability for acts performed in its governmental, as opposed to proprietary functions.[3]

We traced the history of common law immunity in *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975).[4] *Long* decided that previous decisions had erroneously engrafted a nonexistent common law principle to our body of law. Consequently, municipal common law governmental immunity was judicially abolished. The concept was historically indefensible, and the governmental-proprietary distinction was arbitrary and unpredictable:

> The foregoing decisions comparatively illustrate the inherent uncertainty and incomprehensibility of predictable results attendant to the "governmental-proprietary" distinction. It is so unworkable in application that it has caused both judicial confusion and oversight in respect to prior decisions....

> For the foregoing reasons, we believe the rule of municipal government immunity from tort liability previously applied in this jurisdiction to be unsound and unworkable....

> ....

> The previously discussed "governmental-proprietary" distinctions are intended to be abrogated and declared obsolete by the force of this ruling....

*Long v. City of Weirton, supra,* 158 W.Va. at 783, 214 S.E.2d, at 858, 859.

Justice Miller recognized that county school board immunity "arises from the same common law historical source which was disposed of in *Long*." *Boggs, supra,* 161 W.Va. at 487, 244 S.E.2d, at 808 (Miller, J., dissenting). His dissent has now achieved majority support.

There is little to recommend governmental immunity, even if it were historically predicated, which it is not. It was

---

3. For illustrations of this distinction *see Cunningham v. County Court,* 148 W.Va. 303, 134 S.E.2d 725 (1964); *Jones v. City of Mannington,* 148 W.Va. 583, 136 S.E.2d 882 (1964); *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177 (1961); *Ward v. County Court,* 141 W.Va. 730, 93 S.E.2d 44 (1956); *Van Gilder v. City of Morgantown,* 136 W.Va. 831, 68 S.E.2d 746 (1949); *Harrison v. McOwen,* 126 W.Va. 933, 30 S.E.2d 740 (1944); *Morgan v. City of Logan,* 125 W.Va. 445, 24 S.E.2d 760 (1943); *Ashworth v. City of Clarksburg,* 118 W.Va. 476, 190 S.E. 763 (1937); *Warden v. City of Grafton,* 99 W.Va. 249, 128 S.E. 375 (1925); *Wigal v. City of Parkersburg,* 74 W.Va. 25, 81 S.E. 554 (1914); *Mendel and Co. v. City of Wheeling,* 28 W.Va. 233 (1886). Some of these cases were overruled by *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975), which abolished municipal governmental immunity. *See also* Annot., Municipal immunity from liability for torts, 60 A.L.R.2d 1198 (1958 and later case service); 57 Am.Jur.2d, Municipal, School, and State Tort Liability, § 41 (1971 and Supp.); 78 C.J.S., Schools and School Districts, § 320(d) (1952 and Supp.), and cases cited therein.

4. Municipalities were denied State constitutional immunity in *Higginbotham v. City of Charleston,* 157 W.Va. 724, 204 S.E.2d 1 (1974), Syllabus Point 4, *overruled on other grounds,* 160 W.Va. 694, 237 S.E.2d 504 (1977).

judicially created, and it may be judicially abolished, *Adkins v. St. Francis Hospital*, 149 W.Va. 705, 719–720, 143 S.E.2d 154, 163 (1965).[5] *See* Annot., Modern Status of Doctrine of Sovereign Immunity As Applied to Public Schools and Institutions of Higher Learning, 33 A.L.R.3d 703 (1970 and 1981 Supp.). Many commentators regard immunity to be responsible for irresponsible sovereigns and contrary to our fundamental American jurisprudential tenet that there should be a right for every wrong.[6] Also, abolition of governmental immunity may have positive redistributive and allocative effects. Comment, *Sovereign Immunity in Connecticut: Survey and Economic Analysis*, 13 Conn.L.Rev. 293, 310 (1981). It has been shown that costs rising from abolished immunity are modest and that no governments have been ruined by its absence. Taylor, *A Reexamination of Sovereign Tort Immunity in Virginia*, 15 U.Richmond L.Rev. 247 (1981); Note, *An Economic Analysis of Sovereign Immunity in Tort*, 50 So.Cal.L. Rev. 515 (1977).

County school boards are not entitled to a common law governmental immunity. They were not even a part of "common law" government.

Reversed and remanded.

5. Some states have totally abrogated the doctrine, and others retain certain distinctions between governmental and proprietary functions. These cases reflect judicial opinions significantly altering governmental immunities for local political subdivisions or entities: *Cook v. County of St. Clair*, 384 So.2d 1 (Ala.1980); *Scheele v. City of Anchorage*, 385 P.2d 582 (Alaska 1963); *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963); *Muskopf v. Corning Hospital District*, 11 Cal.Rptr. 89, 55 Cal.2d 211, 359 P.2d 457 (1961), *modified*, 20 Cal.Rptr. 621, 57 Cal.2d 488, 370 P.2d 325 (1962); *Flournoy v. School District No. 1*, 174 Colo. 110, 482 P.2d 966 (1971); *Beck v. Claymont School District*, 407 A.2d 226 (Del.Super.1979); *Hargrove v. Town of Cocoa Beach*, 96 So.2d 130 (Fla.1957); *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970); *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill.2d 11, 163 N.E.2d 89, *cert. denied*, 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1959); *Scott County School District 1 v. Asher*, 160 Ind.App. 299, 312 N.E.2d 131 (1974), *affirmed*, 263 Ind. 47, 324 N.E.2d 496 (1975); *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972); *Haney v. City of Lexington*, 386 S.W.2d 738 (Ky.1964); *Board of Commissioners v. Splendour Shipping and Enterprises Co., Inc.*, 273 So.2d 19 (La.1973); *Whitney v. City of Worcester*, 373 Mass. 208, 366 N.E.2d 1210 (1977) (wherein Supreme Court stated it would abolish sovereign immunity if the Legislature failed to do so in 1978); *Pittman v. Taylor*, 398 Mich. 41, 247 N.W.2d 512 (1976); *Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962); *Prewitt v. Parkway School District*, 557 S.W.2d 232 (Mo.1977); *Johnson v. Municipal University of Omaha*, 184 Neb. 512, 169 N.W.2d 286 (1969); *Walsh v. Clark County School District*, 82 Nev. 414, 419 P.2d 774 (1966); *Merrill v. City of Manchester*, 114 N.H. 722, 332 A.2d 378 (1974); *Willis v. Department of Conservation and Economic Development*, 55 N.J. 534, 264 A.2d 34 (1970); *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1976); *Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976); *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974); *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973); *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970); *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962); *Jivrelekas v. City of Worland*, 546 P.2d 419 (Wyo. 1976); *Spencer v. General Hospital*, 138 U.S.App. D.C. 48, 425 F.2d 479 (1969).

Several states have made legislative adjustments to waive immunity or accommodate the abrogation of immunity, including Torts Claims Acts. Others have legislatively overturned judicial abrogations.

6. Borchard, *Government Liability in Tort*, 34 Yale L.J. 1 (1924); David, *Tort Liability of Local Government: Alternatives to Immunity From Liability or Suit*, 6 U.C.L.A.L.Rev. 1 (1959); Engdahl, *Immunity and Accountability for Positive Governmental Wrongs*, 44 U.Colo.L.Rev. 1 (1972); Fox, *The King Must Do No Wrong: A Critique of the Current Status of Sovereign and Official Immunity*, 25 Wayne L.Rev. 177 (1979); Potter, *Foreward: Sovereign Immunity in Pennsylvania: An Open Letter to Mr. Justice Pomeroy*, 38 U.Pitt.L.Rev. 185 (1976); Taylor, *A Re-Examination of Sovereign Tort Immunity in Virginia*, 15 U.Rich.L.Rev. 247 (1981); Van Alstyne, *Governmental Tort Liability: A Decade of Change*, 1966 U.Ill.L.Forum 919; Comment, *Judicial Abrogation of Governmental and Sovereign Immunity: A National Trend With a Pennsylvania Perspective*, 78 Dick.L.Rev. 365 (1973–74); Comment, *Governmental Immunity Statutes-Unconstitutional Deprivation of Due Process and Equal Protection*, 15 Washburn L.J. 155 (1976); Note, *The Role of the Courts in Abolishing Governmental Immunity*, 1964 Duke L.J. 888; Note, *Assault on the Citadel: De-Immunizing Municipal Corporations*, 4 Suffolk U.L.Rev. 832 (1970); Note, *Sovereign Immunity in Missouri: Judicial Abrogation and Legislative Reenactment*, 1979 Wash. U.L.Q. 865. *See generally*, W. Prosser, Law of Torts (4th ed. 1971).

McHUGH, J., deeming himself disqualified, did not participate in the decision of No. 15249, *Whitlock v. Jackson.*