IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2024 Term

_____

FILED
November 12, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-745

_____

THE MERCER COUNTY BOARD OF EDUCATION and
DR. DEBORAH AKERS,
Petitioners,

v.

AMANDA SHREWSBURY,
Respondent.

_____

Appeal from the Circuit Court of Mercer County
The Honorable Mark Wills, Judge
Civil Action No. 19-C-108

AFFIRMED

_____

Submitted:  September 17, 2024
Filed:  November 12, 2024

Chip E. Williams, Esq.
Jared C. Underwood, Esq.
Pullin, Fowler, Flanagan, Brown
& Poe, PLLC
Beckley, West Virginia
Counsel for Petitioners

JB Akers, Esq.
Akers Law Offices, PLLC
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.  "'This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court.' Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002)." Syl. Pt. 1, *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

2.  "A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009).

3.  A party that meets the statutory definition of a political subdivision or employee found in The Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-3, is not entitled to qualified immunity solely on the basis that the claims alleged against them fall within the exceptions to statutory immunity set forth in West Virginia Code § 29-12A-18.

ARMSTEAD, Chief Justice:

On May 2, 2019, the respondent, Amanda Shrewsbury, filed suit against the petitioners, the Mercer County Board of Education and its superintendent, Dr. Deborah Akers, and others[1] alleging that she was wrongfully discharged from her employment as a teacher's aide following her reports that a teacher was abusing and neglecting students. The petitioners filed a motion for summary judgment asserting that the respondent's claims against them were barred by the doctrine of qualified immunity. Following a hearing on the petitioners' motion for summary judgment, the circuit court concluded that the petitioners were not entitled to qualified immunity.

After careful review of the record before us, the parties' briefs and oral arguments, and the applicable law, we conclude that the circuit court did not err in denying the petitioners' motion for summary judgment to the extent it was based on a claim of qualified immunity. Accordingly, we affirm the circuit court's order.

## I. FACTUAL AND PROCEDURAL HISTORY

During the 2018-2019 school year, the respondent worked as a teacher's aide in a pre-k classroom at Cumberland Heights Elementary School (hereinafter "Cumberland Heights"), under the direction of teacher Alma Belcher. The respondent alleges that while

---

[1] The respondent also named the principal of the school where she alleges that she was last employed by the Mercer County Board of Education, Steve Hayes, and a teacher at the school, Alma Belcher. Mr. Hayes and Ms. Belcher are not parties in this appeal.

1

she was employed at Cumberland Heights, she witnessed Ms. Belcher abuse and neglect students. As a result of this alleged abuse and neglect, the respondent made multiple complaints about Ms. Belcher. According to the respondent, she made her first verbal and e-mail complaints to the principal, Steve Hayes, prior to Thanksgiving 2018. The respondent also alleges that she "eventually notified" the petitioner, Dr. Deborah Akers, and other school personnel.[2]

According to the respondent, her position as a teacher's aide was terminated following the complaints that she voiced about Ms. Belcher.[3] On May 2, 2019, the respondent filed the current civil action claiming, among other things, wrongful discharge/retaliatory discharge.[4] The respondent's civil suit proceeded through the

---

[2] According to her Complaint, "[The respondent] believes she made approximately 57 complaints regarding Defendant Belcher's misconduct between around Thanksgiving 2018 and early January 2019."

[3] Many of the respondent's allegations were contested below. For reasons that are set forth *infra*, our review is limited to the circuit court's determination that the petitioners are not entitled to qualified immunity. Therefore, an exhaustive review of the respondent's other claims that remain pending below is unnecessary in the context of the present appeal.

[4] The respondent's complaint contained the following counts: Count I - Public Policy Violations; Count II – Wrongful Discharge/Retaliatory Discharge/Public Policy Violations; Count III – Negligent Infliction of Emotional Distress; Count IV – Intentional Infliction of Emotional Distress/Outrageous Conduct; Count V – Negligence/Civil Assault and Battery; Count VI – Willful Misconduct/Punitive Damages; and Count VII – Negligent Supervision/Retention.

discovery process, and, in May 2022, all of the defendants named in the respondent's civil action filed motions for summary judgment.

On July 20, 2022, a hearing was held on the outstanding motions for summary judgment.[5] Before the circuit court, the petitioners argued, among other things, that all of the claims asserted by the respondent against them were barred by the doctrine of qualified immunity.[6] Specifically, the petitioners argued that the employment-related claims against them did not fall within the purview of The West Virginia Governmental Tort Claims and Insurance Reform Act (hereinafter "the Tort Claims Act"), West Virginia Code §§ 29-12A-1 to -18 (2023), so they were entitled to qualified immunity. All parties agreed that the Tort Claims Act does not apply to civil actions by an employee against his or her political subdivision employer relative to a matter arising out of an employment relationship. *See id.* § 29-12A-18(b). Accordingly, it was undisputed that the petitioners were not entitled to statutory immunity pursuant to the Tort Claims Act.

The respondent, however, disputed that the petitioners were entitled to qualified immunity and argued that the Legislature had an opportunity to provide statutory

---

[5] The circuit court granted the motions of Ms. Belcher and Mr. Hayes and dismissed them from the underlying civil action.

[6] The petitioners' motion for summary judgment contained arguments in addition to those related to immunity. For reasons that will be discussed *infra*, we decline to address any arguments raised in the petitioners' motion for summary judgment other than those related to their request for qualified immunity.

immunity to parties such as the petitioners when it enacted the Tort Claims Act, but it specifically excepted employment-related claims from its grant of statutory immunity. The respondent further argued that even if the circuit court decided that qualified immunity applied, it was abrogated by the petitioners' violation of clearly established rights.

Following the hearing on the motions for summary judgment, the circuit court denied the petitioners' motion for summary judgment as to Counts, I, II, and V and the negligent supervision portion of Count VII. Following this ruling, the petitioners appealed to this Court asserting that they are entitled to qualified immunity as to those claims.

## II. STANDARD OF REVIEW

The petitioners appeal the circuit court's August 1, 2022, interlocutory order, which granted their motion for summary judgment, in part, and denied their motion in part. "'This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court.' Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002)." Syl. Pt. 1, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

"A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the

4

'collateral order' doctrine." Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009).

With these standards in mind, we turn to the parties' arguments.

## III. ANALYSIS

The petitioners appeal an interlocutory order which denied, in part, their motion for summary judgment. The order at issue is reviewable by this Court under the collateral order doctrine. *See* Syl. Pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009) ("A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."). However, our review is limited to the issue of immunity, and we will focus our analysis on that issue. To the extent that the petitioners seek review of issues other than qualified immunity, we emphasize that even "[i]n cases where interlocutory review of qualified immunity determinations occurs, any summary judgment rulings on grounds other than immunity are reserved for review at the appropriate time should the interlocutory appeal result in finding immunity inapplicable under the circumstances." *City of Saint Albans v. Botkins*, 228 W. Va. 393, 397 n.13, 719 S.E.2d 863, 867 n.13 (2011).

As we have recently noted, "[i]mmunity law can be difficult to understand under the best of circumstances[.]" *Kent v. Sullivan*, 249 W. Va. 747, 752, 901 S.E.2d 500,

5

505 (2024). As far back as 2009, we acknowledged that "there remain[ed] a great deal of confusion as to sovereign immunity, [and] qualified immunity[.]" *J.H. v. W. Va. Div. of Rehab. Servs*., 224 W. Va. 147, 153, 680 S.E.2d 392, 398 (2009), *abrogated by A.B.*, 234 W. Va. 492, 766 S.E.2d 751. Because that confusion continued and there were instances in which analyses of immunity law were conflated, this Court issued the *Kent* opinion to provide a "framework . . . which focuses on a method for determining which type of immunity is applicable in a particular case[.]" 249 W. Va. at 752 n.10, 901 S.E.2d at 505 n.10.[7] To that end, *Kent* directs us to "1) categorize the party claiming immunity; and 2) determine whether the party is entitled to immunity under the facts and circumstances presented." *Id.* at 752, 901 S.E.2d at 505.

Resolution of the first step in this case is straightforward: categorizing the party claiming immunity. *See id.* While the petitioners contend that they are a "governmental agency and a governmental officer," they are, in fact, a political subdivision and an employee of a political subdivision, respectively, pursuant to the statutory definitions set forth in the Tort Claims Act. *See* W. Va. Code §§ 29-12A-1 to -18. Specifically, a political subdivision is defined as follows:

> "Political subdivision" means any county commission, municipality and **county board of education**; any separate corporation or instrumentality established by one or more

---

[7] We recognize that the circuit court did not have the decision in *Kent* to provide guidance when it decided this matter below as the circuit court's decision on appeal here was issued while the appeal in *Kent* was still pending before this Court.

counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

*Id.* § 29-12A-3(c) (emphasis added). Further, an "employee" is defined in the Tort Claims Act as

an officer, agent, employee, or servant, whether compensated or not, whether full-time or not, who is authorized to act and is acting within the scope of his or her employment for a political subdivision. "Employee" includes any elected or appointed official of a political subdivision. "Employee" does not include an independent contractor of a political subdivision.

*Id.* § 29-12A-3(a). Thus, as a political subdivision and an employee of a political subdivision, the petitioners were entitled to assert a claim for immunity under the Tort Claims Act, subject to the specific exemptions contained within the Act.

We now move to the second step of the *Kent* analysis, which requires us to determine whether the petitioners are entitled to statutory immunity under the facts and circumstances presented. *See* 249 W. Va. at 752, 901 S.E.2d at 505. This step is also easy to resolve. The petitioners are not entitled to statutory immunity under the Tort Claims

7

Act because the Act does not apply to "[c]ivil actions by an employee, or the collective bargaining representative of an employee, against his or her political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]" W. Va. Code § 29-12A-18(b). As discussed above, the petitioners have acknowledged that the respondent's civil action arises out of her employment relationship with the Mercer County Board of Education and that the Tort Claims Act does not apply to the respondent's claims. Although this should be the end of the analysis, the petitioners assert that, because the nature of the employment *claims* alleged against them do not fall within the scope of the Tort Claims Act, the petitioners should be treated in the same manner as *entities* such as state government agencies that do not fall within the scope of the Tort Claims Act and the petitioners thus should be entitled to avail themselves of the doctrine of qualified immunity.

"It is well established that claims for both constitutional and common law qualified immunity are available *only* for the State, its agencies, officials, and/or employees." *Kent,* 249 W. Va. at 752, 901 S.E.2d at 505 (internal citations omitted) (emphasis added). Despite not meeting the statutory definitions of the State, its agencies, officials, or employees, the petitioners argue that they are entitled to common law qualified immunity. In support of their position, the petitioners rely, in part, upon a 2019 memorandum decision in which this Court concluded that the Mercer County Board of Education was entitled to qualified immunity. *Mercer Cnty. Bd. of Educ. v. Ruskauff*, No. 18-0711, 2019 WL 5692295 (W. Va. Nov. 4, 2019) (memorandum decision). Conversely,

the respondent argues that this Court's decision in *Ruskauff* is not authoritative and does not settle the matter.[8] We find that *Ruskauff* is distinguishable from the matter before us. Unlike the respondent in the present case, the plaintiff in *Ruskauff* did not dispute that the Mercer County Board of Education was entitled to qualified immunity, so we were not directly presented with the issue.[9] Nonetheless, we "acknowledge that our case law has not been a model of clarity in this respect." *Kent*, 249 W.Va. at 752 n.10, 901 S.E.2d at 505 n.10. Therefore, we take this opportunity to offer clarification.

Simply put, the issue in the instant case is whether the petitioners, who are not entitled to statutory immunity in this case because the allegations against them fall within statutory exceptions to immunity under the Tort Claims Act, are instead entitled to qualified immunity. The answer to this question is no. In 1982, this Court abolished common law qualified immunity for county boards of education. *See* Syl. *Ohio Valley*

___

[8] "Memorandum decisions may be cited in any court or administrative tribunal in this State[.]" W. Va. R. App. P. 21(e). "While memorandum decisions may be cited as legal authority, and are legal precedent, their value as precedent is necessarily more limited; where a conflict exists between a published opinion and a memorandum decision, the published opinion controls." Syl. Pt. 5, *State v. McKinley,* 234 W. Va. 143, 764 S.E.2d 303 (2014).

[9] This Court also authorized application of qualified immunity in a case in which the West Virginia Board of Education intervened in a county board of education's school system. *See Goodwin v. Bd. of Educ. of Fayette Cnty.*, 242 W. Va. 322, 835 S.E.2d 566 (2019) (finding that the West Virginia Board of Education's extensive control over a county board of education resulted in the county board being a state actor for purposes of determining whether it was entitled to qualified immunity.) Unlike the Fayette County Board of Education in *Goodwin*, the West Virginia Board of Education had not intervened in Mercer County Board of Education's school system, and the petitioners, therefore, cannot show that they were state actors entitled to qualified immunity.

9

*Contractors v. Bd. of Educ. of Wetzel County*, 170 W. Va. 240, 293 S.E.2d 437 (1982) ("Local boards of education do not have state constitutional immunity nor common law governmental immunity from suit."), *superceded by statute as stated in Moore ex rel. Knight v. Wood Cnty. Bd. of Educ.*, 200 W. Va. 247, 489 S.E.2d 1 (1997). As we explained in *Kent*, "[t]he Tort Claims Act was the Legislature's response to this Court's abolition of common law qualified immunity . . . [for] county boards of education." 249 W. Va. at 753, 901 S.E.2d at 506.

The petitioners in the present case argue that they are entitled to qualified immunity simply because the exceptions within the Tort Claims Act related to employment matters prevent them from asserting statutory immunity pursuant to the Tort Claims Act. However, the mere inapplicability of any Tort Claims Act immunity to the petitioners does not permit them to now avail themselves of qualified immunity, and to apply qualified immunity in that context would circumvent the Legislature's carefully crafted framework for when a political subdivision and its employees may rightfully claim immunity for their acts.

We are not persuaded by the petitioners' argument that the mere fact that the Tort Claims Act is inapplicable due to the specific, issue-related exemptions contained in West Virginia Code §29-12A-18 means they are entitled to qualified immunity. To allow a party to avail itself of qualified immunity based solely on the fact that the Legislature expressly excluded the type of claim being asserted from immunity under the Tort Claims

10

Act would appear both counterintuitive and contrary to the Legislature's intent in carving out the exceptions from statutory immunity contained in West Virginia Code §29-12A-18.[10] Accordingly, we hold that a party that meets the statutory definition of a political subdivision or employee found in The Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-3, is not entitled to qualified immunity solely on the basis that the claims alleged against them fall within the exceptions to statutory immunity set forth in West Virginia Code § 29-12A-18. We, therefore, find that the circuit court did not err in denying the petitioners' motion for summary judgment as to Counts I, II, V and VII based on the assertion of qualified immunity.[11]

---

[10] In *Kent*, we acknowledged that there may be limited instances in which a common law qualified immunity analysis may be appropriate when the Tort Claims Act is inapplicable. *Kent*, 249 W. Va. at 755 n.20, 901 S.E.2d at 508 n.20. For example, federal common law qualified immunity has been applied in federal claims under 42 United States Code § 1983. *See, e.g., Hutchison v. City of Huntington*, 198 W. Va. 139, 147-148, 479 S.E.2d 649, 657-658 (1996) ("[p]ublic officials and local government units should be entitled to qualified immunity from suit under § 1983, or statutory immunity under W. Va. Code 29-12-5(a), unless it is shown by specific allegations that the immunity does not apply.") (internal citations omitted). The petitioners here raised no such circumstances, and merely allege that because they may not avail themselves of statutory immunity under the provisions of the Tort Claims Act, they are instead entitled to qualified immunity. As set forth *supra*, such assertions do not constitute a specifically recognized exception permitting the petitioners to claim qualified immunity.

[11] Interwoven into the petitioners' immunity argument is an assertion that the circuit court conflated certain issues related to qualified and statutory immunity and made reference to legal authority related to state agencies in its holding. It is true that the circuit court's order referenced this Court's decision in *A.B.*, 234 W. Va. 492, 766 S.E.2d 751, which "discuss[ed] the evolution of common law immunity afforded to 'the State, its agencies, officials, and employees, as well as the policy implications attendant to governmental immunity, in an attempt to formulate a workable rule for State-level

11

## IV. CONCLUSION

For the foregoing reasons, we conclude that the circuit court did not err in denying the petitioners' motion for summary judgment on the basis of qualified immunity. Accordingly, the circuit court's August 1, 2022 order is hereby affirmed.

Affirmed.

---

governmental and employee immunities.'" *Kent*, 249 W. Va. at 752 n.12, 901 S.E.2d at 505 n.12. Because the petitioners are a political subdivision and its employee, citation to the opinion in *A.B.* may not have been pertinent to the court's ultimate conclusion. However, we believe that the circuit court made the correct decision regarding immunity and its decision is supported by sufficient legal authority. "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965)."