482 S.E.2d 124

**STATE of West Virginia ex rel. Katherine Anne HOOVER, M.D., Petitioner,**

v.

**Honorable Robert K. SMITH, Special Judge of the Circuit Court of Kanawha County, the West Virginia Board of Medicine, and Anne Werum Lambright, Respondents.**

No. 23613.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1996.

Decided As Modified Feb. 13, 1997.

Rehearing Denied Feb. 13, 1997.

Susan Yurko, Furbee, Amos, Webb & Critchfield, Fairmont, WV, for Petitioner.

Deborah Lewis Rodecker, Charleston, WV, for Respondent West Virginia Board of Medicine.

McHUGH, Justice:

The petitioner, Katherine Anne Hoover, M.D., seeks a writ of prohibition asserting that the Honorable Robert K. Smith, Special Judge of the Circuit Court of Kanawha County, exceeded his legitimate authority when he refused to issue a writ of prohibition against the West Virginia Board of Medicine's hearing examiner, Anne Werum Lambright. The petitioner maintains that the hearing examiner should be directed to issue subpoenas for pre-hearing discovery depositions. The West Virginia Board of Medicine (hereinafter "Board of Medicine") and Anne Werum Lambright, the hearing examiner for the Board of Medicine, are also named as respondents. For reasons explained below, we [1] issue a writ of prohibition as moulded.[2]

### I.

The petitioner was licensed to practice medicine and surgery in West Virginia in 1978. She has maintained her medical license in West Virginia for approximately eighteen years, and currently practices medicine in Braxton County.

On May 13, 1996, the Board of Medicine issued a complaint and notice of hearing which alleged that in a conversation between the petitioner and a seventeen-year-old patient, who was seeking gynecological care, the petitioner asked the patient whether any of her girlfriends would come to her home and have sex with her teenage son. The complaint charges the petitioner with exercising influence within a patient/physician relationship for the purpose of engaging the patient in sexual activity and engaging in

unprofessional, unethical and dishonorable conduct in violation of *W. Va. Code*, 30–3–14(c)(8) and (17) [1989] and 11 CSR 1A–12.1(e), (j) and (r) and 11 CSR 1A–12.2(d) [1994].

On June 26, 1996, the petitioner requested the hearing examiner to issue five subpoenas so that she could take discovery depositions of five witnesses prior to the hearing on her complaint. The hearing examiner, by a letter dated June 27, 1996, refused to issue the five subpoenas, stating that "[t]he rules provide for hearing officer issuance of subpoenas only for hearings and pursuant to notice and time requirements set forth in the rules."

Thereafter, the petitioner sought a writ of prohibition in the Circuit Court of Kanawha County in order to require the hearing examiner to issue the subpoenas for the discovery depositions before proceeding further with the hearing. The circuit court refused to issue a writ of prohibition. Thus, the petitioner filed the petition for a writ of prohibition which is now before this Court.

### II.

The narrow issue before us is whether a hearing examiner for the Board of Medicine has authority to issue subpoenas for pre-hearing discovery depositions. The Board of Medicine asserts that the hearing examiner, Anne Werum Lambright, correctly determined that she had no authority under any statute, rule, or regulation to issue subpoenas for pre-hearing discovery depositions. Conversely, the petitioner asserts that the hearing examiner's failure to issue the requested subpoenas for pre-hearing discovery depositions violated her right to due process under article III, § 10 of the *Constitution of West Virginia.*

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to

sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. This Court recently addressed another issue regarding petitioner's disciplinary proceeding before the Board of Medicine in *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996).

A.

■ Due process is succinctly stated in article III, § 10 of the *West Virginia Constitution:* "No person shall be deprived of life, liberty, or property, without due process of law, and judgment of his peers."[3] This Court has recognized that " '[d]ue process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments.' Syl. pt. 2, *State ex rel. Ellis v. Kelly*, 145 W.Va. 70, 112 S.E.2d 641 (1960)." Syl. pt. 1, *McJunkin Corp. v. Human Rights Com'n*, 179 W.Va. 417, 369 S.E.2d 720 (1988). *See also* syl. pt. 5, *State ex rel. Bowen v. Flowers*, 155 W.Va. 389, 184 S.E.2d 611 (1971).[4]

■ The Supreme Court of the United States has outlined the following principles which must be considered when determining what procedural protections must constitutionally be afforded:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).[5] *See also State ex rel. White v. Todt*, 197 W.Va. 334, 341 n. 7, 475 S.E.2d 426, 433 n. 7 (1996); *City of Huntington v. Black*, 187 W.Va. 675, 679, 421 S.E.2d 58, 62 (1992). Thus,

[w]hen due process applies, it must be determined what process is due and consideration of what procedures due process may require under a given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been impaired by government action.

Syl. pt. 2, *Bone v. W. Va. Dept. of Corrections*, 163 W.Va. 253, 255 S.E.2d 919 (1979).

■ The case before us involves balancing the Board of Medicine's interest against the physician's interest. The physician has an interest in his or her medical license which is a valuable right that may not be revoked without some form of due process being accorded to the physician. *See Wallington v. Zinn*, 146 W.Va. 147, 151, 118 S.E.2d 526, 528 (1961) ("Though a license to practice a profession is a valuable right, one that will be protected by the law, it is not a constitutional or inherent right of a citizen." (citations omitted)). The Board of Medicine has an interest in carrying out its duty to "regulate the professional conduct and discipline of" physicians, *W. Va.Code*, 30–3–7(a) [1980], in a "less cumbersome and less expensive manner than

---

**3.** Similarly, *U.S. Const.* amend. V states, in relevant part, that no person shall "be deprived of life, liberty, or property, without due process of law[.]" *U.S. Const.* amend. XIV likewise states, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"

**4.** This Court has noted that

in analyzing our State's constitutional due process standard, we are free to consider the applicable federal constitutional standards. Ultimately, however, we must be guided by our own principles in establishing our State standards, recognizing that so long as we do not fall short of the federal standard our determination is final.

*Waite v. Civil Service Com'n*, 161 W.Va. 154, 158–59, 241 S.E.2d 164, 167 (1977) (footnote omitted).

**5.** Similarly, this Court has held that the following guidelines should be used to determine what due process requires outside of the criminal arena:

Applicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the *West Virginia Constitution*, which are[:] First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation.

Syl. pt. 2, *North v. W. Va. Bd. of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977). *See also* syl. pt. 2, *Higginbotham v. Clark*, 189 W.Va. 504, 432 S.E.2d 774 (1993).

is normally encountered at a trial in court." *Quoting* 2 Am.Jur.2d *Administrative Law* § 5 (1994) (footnote omitted). This Court, therefore, is required, when determining petitioner's right to take discovery depositions, to balance petitioner's interest in her medical license against the Board of Medicine's interest in expeditiously, but fairly, conducting its disciplinary proceeding.

■ Generally, there is no constitutional right to pre-hearing discovery in administrative proceedings. *See National Labor Relations Board v. Interboro Contractors, Inc.,* 432 F.2d 854, 857–58 (2d Cir.1970), *cert. denied* 402 U.S. 915, 91 S.Ct. 1375, 28 L.Ed.2d 661 (1971); *In re Herndon,* 596 A.2d 592, 595 (D.C.Ct.App.1991); *Chafian v. Alabama Bd. of Chiropractic Examiners,* 647 So.2d 759, 762 (Ala.Civ.App.1994); *Pet v. Dept. of Health Services,* 207 Conn. 346, 542 A.2d 672, 677 (1988); *In re Tobin,* 417 Mass. 81, 628 N.E.2d 1268, 1271 (1994); 2 Am.Jur.2d *Administrative Law* § 327 (1994); 4 J. Stein, G. Mitchell, & B. Mezines, *Administrative Law* § 23.01[1] (1993). *Cf. Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960) (The Supreme Court of the United States refused to mandate that discovery depositions could be taken in an admiralty proceeding when the General Admiralty Rules did not provide for the taking of such depositions). However, pre-hearing discovery may be authorized by the administrative agency in its rules or regulations. *See generally* 2 Am.Jur.2d *Administrative Law* § 327 (1994). Before an administrative agency may adopt rules and regulations allowing for pre-hearing discovery, the enabling statutes must expressly or implicitly authorize the agency to adopt such provisions. *See* syl. pt. 3, *Appalachian Regional Health Care, Inc. v. W. Va. Human Rights Com'n,* 180 W.Va. 303, 376 S.E.2d 317 (1988).

■ If an agency chooses to adopt rules or regulations providing for some form of discovery, then it must ensure that its procedures meet due process requirements. *See McClelland v. Andrus,* 606 F.2d 1278, 1285–86 (D.C.Cir.1979); 2 Am.Jur.2d *Administrative Law* § 327 (1994); 2 Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.1 at 2 (3d ed.1994); 4 J. Stein, *supra* § 23.01[1] at 23–11. *Cf. Tasker v. Mohn,* 165 W.Va. 55, 65, 267 S.E.2d 183, 189 (1980) (Administrative agencies must abide by its own rules so as not to violate the due process clause). Furthermore, in some circumstances "an administrative agency must grant discovery to a party in a contested case regardless of whether the enabling statute or agency rules provide for it, if refusal to grant discovery would so prejudice the party as to amount to a denial of due process." *In re Tobin,* 628 N.E.2d at 1271. *See also McClelland,* 606 F.2d at 1286. *In re Herndon,* 596 A.2d at 595, 2 Am.Jur.2d *Administrative Law* § 327 (1994); 4 J. Stein, *supra* § 23.01[1].

### B.

■ The West Virginia Medical Practice Act [hereinafter "Medical Practice Act"], set forth in W. Va.Code, 30–3–1, *et seq.,* governs the procedures the Board of Medicine must follow in disciplinary proceedings.[6] In addition to outlining additional procedural requirements which must be accorded in a disciplinary proceeding, the Medical Practice Act mandates that disciplinary hearings are to be conducted in accordance with *W. Va. Code,* 29A–5–1 *et seq.* of the State Administrative Procedures Act.[7] *See W. Va.Code,* 30–3–14(h) [1989]. Neither the Medical Practice Act nor the State Administrative Procedures Act expressly provides for the taking of discovery depositions. The regulations promulgated by the Board of Medicine pursuant to

---

**6.** *W.Va.Code,* 30–3–2 [1980] states that "[t]he purpose of this article is to provide for the licensure and professional discipline of physicians and podiatrists and for the certification and discipline of physician assistants." In this case, we are concerned with a disciplinary proceeding involving a physician; and thus, we will refer only to the physician when discussing how the Medical Practice Act and regulations promulgat-

ed by the Board of Medicine relate to the instant case.

**7.** *W. Va.Code,* 29A–5–1 *et seq.* outlines how an administrative agency must handle a "contested case". *See* n. 12, *infra* (Discusses what a "contested case" under the State Administrative Procedures Act is).

*W. Va. Code,* 30–3–1 *et seq.*[8] of the Medical Practice Act likewise do not expressly provide for the taking of discovery depositions. *See* 11 CSR 1A–1 *et seq.*

Furthermore, *W. Va. R. Civ. P.* 81(a)(1) makes clear that the *West Virginia Rules of Civil Procedure* do not automatically apply to administrative proceedings. Because neither the enabling statutes nor the regulations make reference to the *West Virginia Rules of Civil Procedure,* its discovery provisions are inapplicable in a disciplinary proceeding brought under the Medical Practice Act.[9] As indicated above, there are no provisions in the enabling statutes or regulations which expressly provide for the taking of discovery depositions in a medical disciplinary proceeding. We must, therefore, examine whether the authorization in the enabling statutes and regulations to take evidentiary depositions and issue subpoenas in a medical disciplinary proceeding *implicitly* authorizes the hearing examiner, in the case before us, to issue subpoenas for the taking of discovery depositions.

### AUTHORITY TO TAKE DEPOSITIONS

The only mention of the use of depositions in a disciplinary proceeding brought pursuant to the Medical Practice Act is found in *W. Va. Code,* 29A–5–1(c) [1964], the State Administrative Procedures Act, and 11 CSR 3–15 [1989]. Both allow evidentiary depositions to be taken: "Evidentiary depositions may be taken and read into evidence as in civil actions in the circuit courts of this State." *quoting* 11 CSR 3–15 [1989].[10] The question before us is whether the express authority to take evidentiary depositions implicitly in-

cludes the authority to also take discovery depositions.

Courts in recent times have "refused to recognize a distinction between 'discovery' and 'evidentiary' depositions with regard to admissibility at trial." *United States v. International Business Machines Corp.,* 90 F.R.D. 377, 381 n. 7 (1981). Indeed, the current *West Virginia Rules of Civil Procedure* do not distinguish between evidentiary and discovery depositions. However, the Board of Medicine correctly notes that when *W. Va. Code,* 29A–5–1(c) was enacted in 1964 the *West Virginia Rules of Civil Procedure* which were then effective differentiated between depositions taken for the purpose of discovery and depositions taken for use as evidence: "Any party may take the testimony of any person ... by deposition upon oral examination or written interrogatories *for the purpose of discovery or for use as evidence in the action* or for both purposes." *W. Va. R. Civ. P.* 26(a) [1960], in relevant part (emphasis added). We must conclude, based on the wording of *W. Va. Code,* 29A–5–1(c) [1964] and 30–3–14(h) [1989], of the Medical Practice Act, that the legislature intended there to be a distinction between evidentiary depositions and discovery depositions when it expressly authorized the taking of evidentiary depositions under the State Administrative Procedures Act.

The purpose of an evidentiary deposition, as its name implies, is very different from the purpose of a discovery deposition. The former is taken with the knowledge that it will be introduced as "evidence" at the hearing. The latter is taken in order to "discover" information. The enabling statutes and regulations expressly provide for evidentiary de-

---

**8.** *W.Va.Code,* 30–3–7(a)(1) [1980] states that the Board of Medicine may "[a]dopt such regulations as are necessary to carry out the purposes of this article[.]" *See* n. 6, *supra* (Discusses the purpose of article 3, Chapter 30 of the *W. Va. Code*).

**9.** *W. Va. R. Civ. P.* 81(a)(1) states:

(a) *To what proceedings applicable.*—(1) Review of decisions of magistrates and administrative agencies.—When the appeal of a case has been granted or perfected, these rules apply.... Likewise, these rules, where applicable, apply in a trial court of record when any testimony is taken before the court in the judicial review of an

order or decision rendered by an administrative agency.

Although rule 81 of the *West Virginia Rules of Civil Procedure* expressly states that the rules of civil procedure apply on appeal, rule 81 does not state that the rules shall apply in the underlying administrative proceeding.

**10.** *W.Va.Code,* 29A–5–1(c) [1964] states: "Evidentiary depositions may be taken and read as in civil actions in the circuit courts of this state." The wording of *W. Va.Code,* 29A–5–1(c) differs slightly from the wording found in 11 CSR 3–15 [1989], but nevertheless conveys the same meaning.

positions in a disciplinary hearing before the Board of Medicine. However, there is no indication by either the legislature or the Board of Medicine that discovery depositions are similarly allowed.

### AUTHORITY TO ISSUE SUBPOENAS

The legislature has expressly authorized the issuance of subpoenas under the Medical Practice Act, *W. Va.Code*, 30–3–7(a)(2) [1980],[11] and pursuant thereto, the Board of Medicine has promulgated a regulation regarding the issuance of subpoenas during the investigation of a complaint filed against a physician:

> The complaint committee may request the Board to issue subpoenas and subpoena duces tecum as required to complete its investigation and may utilize the Board investigator to conduct whatever investigations are necessary to determine the truth and validity, or lack thereof, of complaints. In the event the Board or its complaint committee initiates its own complaint, it may utilize subpoenas, subpoenas duces tecum and its investigators as it determines necessary to gather facts and evidence.

11 CSR 1A–14.9 [1994]. Though the Board of Medicine is authorized to issue subpoenas during the investigatory stage, the physician who is the subject of the investigation is not accorded similar authorization to such subpoenas. The question we must answer is whether such right should be accorded to a physician under investigation.

■ This question is not easily answered, however, because

> '[d]ue process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agen-

cies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514–15, 4 L.Ed.2d 1307, 1321 (1960). An administrative agency's actions may be only investigatory, only adjudicatory or a combination of both. The due process that must be accorded in an administrative proceeding depends upon the nature of the administrative agency's actions. *See generally* 2 Am.Jur.2d *Administrative Law* § 140 (1994).

For instance, in *Hannah, supra,* the Supreme Court of the United States addressed the issue of whether the rules of procedure adopted by the Commission on Civil Rights for conducting its investigations provided due process. The Court concluded that because the Civil Rights Commission only engaged in investigations and had no power to adjudicate, due process did not require that a person summoned by the Commission for questioning be afforded knowledge of the identity of the complainant or given the ability to cross-examine other witnesses appearing at a hearing conducted by the Commission. *Id. See also Francis v. Accardo*, 602 So.2d 1066, 1069 (La.Ct.App.1992).

However, in *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), the United States Supreme Court found that the administrative agency actually adjudicated legal rights under the guise of investigating. *Jenkins* involved Louisiana's

---

11. *W. Va.Code*, 30–3–7(a)(2) [1980] states, in relevant part, that the Board of Medicine may "[h]old hearings and conduct investigations, subpoena witnesses and documents and administer oaths[.]" As we have previously indicated, "[t]he state Administrative Procedures Act does not, in and of itself, grant the authority to agencies to issue subpoenas. Rather, such authority is recognized *if* it is expressly granted by statute. *See* A. Neely, *Administrative Law in West Virginia* § 5.16 (1982)." *W. Va. Human Rights Com'n v.*

*Moore*, 186 W.Va. 183, 186, 411 S.E.2d 702, 705 (1991) (emphasis provided). *See W. Va.Code*, 29A–5–1(b) [1964] (An agency for purposes of conducting a hearing in a contested case may only issue subpoenas if such authority is expressly granted by statute to such agency). As the language quoted above in *W. Va.Code*, 30–3–7(a)(2) [1980] indicates, the legislature has expressly granted the Board of Medicine authority to issue subpoenas.

Labor Management Commission of Inquiry which was authorized to investigate violations of criminal laws arising out of labor-management relations. The issue before the United States Supreme Court was whether the Commission was required to provide due process protections to persons who were the subject of the investigations. Because the Court found that the Commission makes an actual finding that a specific individual is guilty of a crime, it determined that this case was distinguishable from *Hannah, supra,* in that the Commission was acting as an adjudicatory body rather than as an investigatory body when conducting its investigations. Therefore, the United States Supreme Court concluded that due process required persons under investigation by the Commission to be entitled to broad confrontation and cross-examination rights. *Id.*

The Board of Medicine's activities in a disciplinary proceeding against a physician fall somewhere between *Hannah, supra,* and *Jenkins, supra.* The Board of Medicine, during its investigatory stage, collects information about the pending complaint. Once the investigation is complete and after a "formal administrative hearing," the Board of Medicine "adjudicates" whether the physician under investigation should be disciplined.[12] Clearly then, the Board of Medicine not only investigates the complaint initiated against the physician, it ultimately adjudicates whether the physician should be disciplined.

While not directly on point, the Supreme Court of the United States' analysis in *Securities and Exchange Com'n v. Jerry T. O'Brien Inc.,* 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), regarding the Securities and Exchange Commission's (hereinafter the "SEC") investigatory power is instructive. In *Jerry T. O'Brien, Inc.,* the issue was whether the SEC must "notify the 'target' of such an investigation when it issues a subpoena to a third party." *Id.* at 737, 104 S.Ct. at 2722, 81 L.Ed.2d at 618. The United States Supreme Court concluded that the SEC was not required to notify the target of the investigation:

> The opinion of the Court in *Hannah v. Larche,* 363 U.S. 420 [80 S.Ct. 1502, 4 L.Ed.2d 1307] (1960), leaves no doubt that neither the Due Process Clause of the Fifth Amendment nor the Confrontation Clause of the Sixth Amendment is offended when a federal administrative agency, without notifying a person under investigation, uses its subpoena power to gather evidence adverse to him. *The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights ...,* and the Confrontation Clause does not come into play until the initiation of criminal proceedings[.]

*Id.,* 467 U.S. at 742, 104 S.Ct. at 2725, 81 L.Ed.2d at 621 (emphasis added). *Jerry T. O'Brien, Inc.* makes clear that administrative agencies acting pursuant to authority granted in enabling statutes have broad powers to conduct investigations which do not implicate the due process rights of the person being investigated.

---

**12.** The Board of Medicine's investigatory stage ends when the "contested case" is brought against the individual under investigation. "Contested case" is defined in *W. Va.Code,* 29A–1–2(b) [1964] which states:

'Contested case' means a proceeding before an agency in which the legal rights, duties, interests or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing, but does not include cases in which an agency issues a license, permit or certificate after an examination to test the knowledge or ability of the applicant where the controversy concerns whether the examination was fair or whether the applicant passed the examination and does not include rule making[.]

The "contested case" is the case that has moved from the investigatory stage to the adjudicatory stage. *Cf.* Alfred S. Neely, IV *Administrative Law in West Virginia* § 2.03 at 44 (1982) (The beginning of the "contested case" is when due process considerations arise).

Additionally, we note that the Board of Medicine has defined the phrase "adjudicatory hearing" to mean:

A formal administrative hearing before the Board or designated hearing examiner, conducted to determine the truth and validity of complaints filed against a licensee. An adjudicatory hearing may result in disciplinary action including, but not limited to, suspension or revocation of a licensee's license, reprimand, censure or other limitation, including probation, on a licensee's practice.

11 CSR 1A–3.2 [1994].

■ 2 Am.Jur.2d *Administrative Law* § 140 (1994) best summarizes the law governing the issue before us:

> There is no requirement that the person being investigated be given notice of charges, the names of informants, a hearing, or the right to confront and cross-examine complainants, even though the investigation may affect reputations or result in the commencement of other proceedings. *As long as no legal rights are adversely determined during the investigation, the demands of due process are satisfied if procedural rights are granted in the subsequent proceedings.*

(footnotes omitted and emphasis added).

The Medical Board, in the case before us, does not adjudicate legal rights during the investigatory stage. Instead, the investigatory stage is merely a means for the Board of Medicine to ascertain the validity of the complaint brought against the physician. Once the Board of Medicine determines the nature of the complaint the proceeding moves into the "contested case" stage where the physician is accorded a wide range of due process protections:

> The physician ... has the right to defend against any such charge by the introduction of evidence, the right to be represented by counsel, the right to present and cross-examine witnesses and the right to have subpoenas and subpoenas duces tecum issued on his behalf for the attendance of witnesses and the production of documents.

*W. Va.Code,* 30–3–14(h) [1989], in relevant part. Given the due process afforded the physician during the "contested case" stage of the medical disciplinary proceeding, we conclude that generally the physician need not be accorded the right to obtain subpoe-

nas for pre-hearing discovery depositions during the investigatory stage.

However, if the Board of Medicine impedes the physician's ability to adequately address the charges being investigated or brought by the Board of Medicine against the physician, then due process may require the issuance of subpoenas for pre-hearing discovery purposes. For example, if the Board of Medicine refuses to give a physician reports it obtained during the investigatory stage and used when determining whether to discipline the physician in the "contested case" stage, then due process may require the issuance of a subpoena duces tecum compelling the Board of Medicine to produce those reports. *Cf. Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (The issue was whether the employee contractor's security clearance could be revoked by an administrative agency that relied on confidential reports which were not disclosed to the employee contractor; however, the United States Supreme Court did not resolve this issue because it concluded that neither the President nor Congress has explicitly authorized the administrative agency to revoke security clearances). Similarly, if the representatives of the Board of Medicine informed potential witnesses during the investigatory stage that they were not to cooperate with the physician who is being investigated, then due process may require that the physician be permitted to request the issuance of subpoenas for pre-hearing discovery purposes.[13] The Board of Medicine may not conduct its investigation in such a manner so as to purposefully prevent the physician from obtaining information he or she may need to adequately address the charges pending against him or her.[14] Whether a physician must be accorded due process by the issuance of pre-hearing discovery depositions or authorizing some type of discovery in the

---

**13.** In the case before us, the petitioner states that she sent correspondence to five witnesses seeking a statement in order to prepare for her defense. Only one out of the five witnesses has responded to her request for a statement. The briefs of the parties do not indicate why the witnesses have failed to respond to petitioner's request; however, if the hearing examiner finds that there is any evidence that the Board of Medicine told those witnesses not to cooperate with the petitioner, then the hearing examiner should issue the sub-

poenas requested by the petitioner in order to assure that petitioner is accorded due process.

**14.** In the case before us, the Board of Medicine asserts that petitioner has everything in her possession that the Board of Medicine has in its possession pursuant to *W. Va.Code,* 30–3–9(c) [1990] which gives the physician the right to examine his or her own historical record maintained by the Board of Medicine.

investigatory stage of a medical disciplinary proceeding will have to be determined upon the particular circumstances of a given case.

In addition to the subpoena power granted in 11 CSR 1A–14.9 [1994] discussed above, the Board of Medicine has also promulgated regulations regarding the issuance of subpoenas in a "contested case." Specifically, 11 CSR 3–10.5(q) [1989] states: "Summons and subpoenas may be issued by the president or secretary of the Board [of Medicine] and by hearing examiners appointed by the Board [of Medicine]." 11 CSR 3–13.1 [1989] empowers a hearing examiner for the Board of Medicine to subpoena witnesses and documents when conducting a hearing, and lastly, 11 CSR 3–16 [1989] empowers the president of the Board of Medicine or his or her designee to issue subpoenas or subpoenas duces tecum. The above regulations do not implicitly confer authority on the hearing examiner to issue subpoenas for the purpose of conducting discovery depositions during the "contested case." However, just as we emphasized in our discussion of the Board of Medicine's subpoena power during the investigatory stage, the Board of Medicine may not conduct the "contested case" in such a manner so as to unduly prevent the physician from adequately addressing the charges pending against him or her. If the Board of Medicine does conduct the "contested case" in a manner that is fundamentally unfair to the physician, then due process may require the issuance of subpoenas for discovery purposes.

In summary, there is no constitutional right to discovery in administrative proceedings. *See Interboro Contractors, Inc., supra.* Thus, we defer to the legislature and Board of Medicine to determine whether discovery is appropriate in a disciplinary proceeding brought under the Medical Practice Act. However, if there are circumstances present which would so prejudice the physician so as to amount to a denial of due process in a disciplinary proceeding, then the Board of Medicine must grant discovery regardless of whether the enabling statutes or agency regulations provide for such right. *See In Re Tobin, supra.*

Accordingly, we hold that pursuant to the West Virginia Medical Practice Act set forth in *W. Va.Code,* 30–3–1 *et seq.* and the regulations promulgated by the Board of Medicine pursuant to *W. Va.Code,* 30–3–1 *et seq.* found in 11 CSR 1A–1 *et seq.,* discovery depositions are not expressly or implicitly authorized in a disciplinary proceeding before the Board of Medicine. Furthermore, the due process clause found in article III, § 10 of the *Constitution of West Virginia* does not mandate that discovery be accorded to a physician in a disciplinary proceeding unless there are particular circumstances which would make it fundamentally unfair to refuse to allow the physician to conduct discovery prior to the hearing in the disciplinary proceeding. In such event the physician may obtain subpoenas for purposes of obtaining pre-hearing discovery depositions.

### C.

In the case before us, the petitioner asserts that there · are circumstances in her case which would make it fundamentally unfair pursuant to *W. Va. Const.* art. III, § 10 to refuse to issue subpoenas for the purpose of taking discovery depositions prior to her hearing. However, because the hearing examiner concluded that she did not have authority to issue subpoenas for discovery depositions under any circumstances, she did not reach the issue of whether, under the particular circumstances of this case, due process requires her to issue the requested subpoenas for discovery depositions. The hearing examiner should have at least examined the petitioner's assertions in order to assess whether due process requires her to issue subpoenas in this case.

### III.

We have held that " '[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' Syl. pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syl. pt. 2, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984). When a

court has jurisdiction and the petitioner asserts that the court has exceeded its legitimate powers, then we examine the following five factors when determining whether to grant a writ of prohibition:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). In that the petitioner has shown that the hearing examiner's conclusion that she had no authority to issue the requested subpoenas is clearly erroneous as a matter of law, we find that a writ of prohibition should issue against the hearing examiner to prohibit her from proceeding with the hearing until she determines whether there are any particular circumstances in this case which would make it fundamentally unfair pursuant to *W. Va. Const.* art. III, § 10 to refuse to grant petitioner's request to issue subpoenas and to take discovery depositions. However, instead of issuing the writ against the circuit court as requested by petitioner, we issue the writ against the hearing examiner. Accord-ingly, the petitioner's request for a writ of prohibition is granted as moulded.

Writ granted as moulded.

RECHT, Judge, sitting by temporary assignment when opinion was originally filed on December 13, 1996.

WORKMAN, C.J., and McHUGH, DAVIS, STARCHER and MAYNARD, JJ., participating in modified opinion after rehearing was denied.