647 S.E.2d 747

**Robert J. ZALESKI, M.D., Plaintiff Below, Appellee,**

v.

**WEST VIRGINIA PHYSICIANS' MUTUAL INSURANCE COMPANY, A Corporation, Defendant Below, Appellant.**

**No. 33242.**

Supreme Court of Appeals of West Virginia.

Submitted: May 9, 2007.

Decided: June 27, 2007.

**314**

James F. Companion, Yolonda G. Lambert, Schrader, Byrd & Companion, PLLC, Wheeling, for the Appellee.

D.C. Offutt, Jr., Perry W. Oxley, Jody M. Offutt, Dana N. Bonnell, Offutt, Fisher & Nord, Huntington, for the Appellant.

Mary Jane Pickens, Offices of the West Virginia Insurance Commissioner, Charleston, for Amicus Curiae, West Virginia Insurance Commissioner.

ALBRIGHT, Justice.

This case is an appeal by the defendant below, West Virginia Physicians' Mutual Insurance Company (hereinafter referred to as "Mutual"), of the April 27, 2006, final order [1] of the Circuit Court of Ohio County in a suit involving the reinstatement of medical malpractice insurance coverage for plaintiff below, Robert J. Zaleski, M.D. (hereinafter referred to as "Dr. Zaleski"). Among the matters being appealed are the lower court's grant of partial summary judgment for Dr. Zaleski and denial of Mutual's motions seeking dismissal of the case or for summary judgment. After due consideration of the briefs and arguments of counsel,[2] the record certified for our review and relevant law, the challenged order is affirmed, in part, and reversed, in part, and the case is remanded with direction as further explained below.

## I. Factual and Procedural Background

The underlying suit is an action by Dr. Zaleski, who is an orthopedic surgeon, brought against Mutual after he was denied renewal of medical malpractice insurance coverage by Mutual. Mutual is a West Virginia corporation formed in 2004 in accord with statutory provisions enacted by the Legislature to address the "nationwide crisis in the field of medical liability insurance" causing "physicians in West Virginia [to] find it increasingly difficult, if not impossible, to obtain medical liability insurance either because coverage is unavailable or unaffordable." W.Va.Code § 33–20F–2 (a)(1) and (6) (2003) (Repl.Vol.2006). The Legislature took temporary measures to alleviate the medical liability insurance problem by creating programs to provide coverage through the West Virginia Board of Risk and Insurance Management (hereinafter referred to as "BRIM") until the legislative "mechanism for the for-

---

1. Mutual states that appeal is taken from two orders of the lower court, one dated September 22, 2005, and the other dated April 27, 2006. Only the April 27, 2006, order is a final order, which by its terms incorporates by reference the rulings contained in the September 22, 2005, order.

2. An amicus brief was filed and arguments presented by the West Virginia Insurance Commissioner in support of reversal of the April 27, 2006, order, claiming that the rulings contained therein significantly hinder regulation of Mutual by the Insurance Commissioner.

mation of a physicians' mutual insurance company" was actuated. W.Va.Code § 33–20F–2(b) (2003) (Repl.Vol.2006). The statutory scheme provided that all medical liability insurance obligations and risks associated with BRIM policies be transferred to the new company upon its formation. W.Va. Code § 33–20F–9(b)(1) (2003); see 2003 W.Va. Acts c. 147.[3]

Dr. Zaleski was insured for professional liability through BRIM, and his policy was among the one thousand four hundred seventy other physician malpractice policies in the state that were transferred to Mutual on July 1, 2004. By certified letter dated September 8, 2004, Dr. Zaleski was notified by Mutual that his existing policy coverage would not be renewed at its natural termination date of December 22, 2004.[4] The notification did not state a reason for the non-renewal, and no attempt was made by Mutual to cancel the policy earlier than the termination date.

Dr. Zaleski notified Mutual by letter dated September 23, 2004, of his desire to appeal the non-renewal decision. Mutual responded by certified letter designating a date for the hearing and indicating that it would be limited in duration to fifteen minutes. As related in the April 27, 2006, order, this mailing also included a written description of the appeal process containing the following elements:

(a) Coverage is declined by underwriting.

(b) An appeal is requested by the Physician.

(c) The physician is requested to make a brief statement to the Underwriting Committee, can ask questions of the Committee, and can entertain questions from the Committee members.

(d) The Committee reviews the application for coverage and the information gathered during the appeal and makes a decision regarding the underwriting decision immediately following the Physician's appearance before the Committee.

(e) The physician will receive a telephone call from a representative of the Committee the day following the appeal and will receive a follow-up letter by mail.

Dr. Zaleski appeared in person before Mutual's Underwriting Committee on November 11, 2004, presented evidence on his own behalf and responded to questions from the Committee. No stenographic record was made of the hearing. The day following the hearing, Mutual informed Dr. Zaleski by phone that the Committee unanimously upheld the decision not to renew the doctor's liability coverage. The information was also transmitted to Dr. Zaleski in writing by certified mail on November 12, 2004. In neither instance was Dr. Zaleski advised of any right to appeal Mutual's non-renewal decision.

Dr. Zaleski responded to Mutual by letter dated November 30, 2004, requesting that Mutual provide him with a detailed explanation of why the insurance policy would not be renewed. Dr. Zaleski also lodged what he called a "formal complaint" with the West Virginia Insurance Commissioner on December 8, 2004, seeking information about the non-renewal of his malpractice coverage. The Insurance Commissioner's Office forwarded the letter to Mutual and requested a written response. In its December 15, 2004, written response to the Insurance Commissioner, Mutual said its reason for not renewing Dr. Zaleski's policy was because of the "frequency of lawsuits in his history."[5] A

---

**3.** West Virginia Code § 33–20F–9 was amended and reorganized in 2006, and this transfer provision now appears in subsection (b)(2) of the current statute.

**4.** The provisions of West Virginia Code § 33–20F–9 (b)(1) in effect at the time of transfer required Mutual to accept all liability on the BRIM policies upon the transfer. *See* 2003 W.Va. Acts ch. 147. This portion of the relevant statute was modified in 2006 to include, among other things, the following proviso: "That the company [Mutual] may decline or refuse to renew any and all such contracts of insurance

transferred ... upon the expiration of the respective terms of each contract of insurance so transferred...." W.Va.Code § 33–20F–9 (b)(1) (2006) (Repl.Vol.2006).

**5.** The April 27, 2006, order states that during discovery in the underlying case, Mutual indicated that the reasons for not renewing the doctor's policy included "prior claims history and other factors including prior alcohol and/or chemical dependancy." The order further states that Dr. Zaleski's claim history involved nineteen medical malpractice claims during his twenty-five years

copy of Mutual's December 15, 2004, letter was mailed to Dr. Zaleski by the Insurance Commissioner with written notification that no administrative action would be taken against Mutual because it did not appear that Mutual had violated any applicable statute or rule regarding non-renewal of the doctor's policy. The notification did not include reference to any right to seek judicial review of the Insurance Commissioner's determination through the Circuit Court of Kanawha County. *See* W.Va.Code § 33-2-14 (1957) (Repl. Vol.2006).

On April 4, 2005, Dr. Zaleski filed suit against Mutual asserting that the company's decision not to renew his malpractice insurance policy amounted to breach of the covenant of good faith and fair dealing, arbitrary and capricious conduct, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress. The relief sought in the complaint was "judgment against Physicians Mutual for compensatory damages in an amount to be determined by a jury and, [punitive damages] to the extent that the jury may determine that the aforesaid acts constitute actual malice." Additionally, Dr. Zaleski sought award of attorneys fees and expenses, pre- and post-judgment interest and "any and other relief as determined by the Court."

In response to all claims raised in Dr. Zaleski's complaint, on June 2, 2005, Mutual filed a motion to dismiss or, in the alternative, for summary judgment. On August 5, 2005, the lower court held a hearing on the motion and concluded that Mutual's status as a private, public, or quasi-public body was a predicate question of law that had to be determined before any other matter. The circuit court judge asked the parties to brief the issue. Dr. Zaleski responded by filing a cross-motion for summary judgment claiming that Mutual should be required by the court to renew the doctor's liability policy and/or find that Mutual was a "quasi-public agency" whose decisions refusing to renew professional liability policies were subject to review under due process standards.

The trial court denied Mutual's motion to dismiss or for summary judgment by order dated September 22, 2005. Also in that order, the lower court granted Dr. Zaleski partial summary judgment[6] upon the issue that Mutual was a state actor. The order recounted the lower court's conclusions that

> [The] various provisions of the Physician's Mutual Insurance Act clearly establish a close nexus between the State of West Virginia and the Physician's Mutual Insurance Company, by which the goals of the State of West Virginia to protect the health, safety and welfare of its citizens are "pervasively entwined" with the means of implementing those goals through a private insurance entity, without subjecting the State of West Virginia to substantial actual and potential liability.

> . . . . .

> Once the State Action threshold is satisfied, the Due Process clause of both the United States and West Virginia Constitutions require procedural safeguards against that "State Action" which may affect the liberty or property interest of an individual....

> . . . . .

> [A] person aggrieved by an adverse decision denying continued coverage in a medical liability insurance policy is entitled to a meaningful hearing mechanism including notice of the insurers' intention not to renew prior to the non-renewal; the stated reasons for the non-renewal; a hearing before an appropriate agency; the right to be represented by a lawyer; an opportunity to present evidence in support of why the action should not be taken, and the right to challenge the decision not to renew if that decision is considered to be arbitrary or capricious.

(Internal citations omitted). By way of the September 22, 2005, order, the lower court directed Mutual to submit a procedure which would afford due process to a policyholder

---

of practice, resulting in the payment of $2,042,447.00 in indemnity settlements.

**6.** As stated in the September 22 order, the lower court converted the doctor's motion for summary judgment to a motion for partial summary judgment on the issue of state action.

who desired to contest any decision by Mutual not to renew the policy.

Mutual filed with the court a mechanism for review of non-renewal decisions. That filing was made under protest and included various objections Mutual had regarding the rulings in the September 22, 2005, order. These objections included allegations that the lower court: lacked subject matter jurisdiction; improperly considered claims not asserted in the complaint; granted relief that was not requested and was not the product of an evidentiary hearing; improperly concluded that Mutual was a state actor; and the review undertaken in Dr. Zaleski's case would satisfy due process concerns even if Mutual were a state actor.

The court below issued a final and appealable order on April 27, 2006, in which it reaffirmed the conclusion that Mutual is a quasi-public body and a state actor. The order contained the further conclusion that Dr. Zaleski has a significant property interest in maintaining the malpractice insurance policy and is entitled to due process safeguards with regard to a non-renewal decision of Mutual as a state actor. According to the terms of the order, the process due Dr. Zaleski by Mutual was the same procedure prescribed in West Virginia Code § 33–2–13 (1957) (Repl.Vol.2006) for use by the Insurance Commissioner to review any allegations involving any act, omission, rule, regulation or order of the Commissioner. Under the terms of the order, any appeal of Mutual's non-renewal decision could be made directly to the circuit court in the county where Dr. Zaleski resides or the Circuit Court of Kanawha County rather than to the Insurance Commissioner. The order also reflects the lower court's finding that the procedural safeguards Mutual afforded Dr. Zaleski failed to comply with the statutory standard and did not satisfy due process. The order ultimately directs the immediate reinstatement of insurance coverage to Dr. Zaleski by Mutual and sets a date for a jury trial, following discovery, on the issue of damages related to the non-renewal of the insurance policy. As a natural consequence of these rulings, the order reflects the lower court's denial of Mutual's various motions, including objection raised to the court making findings of facts without conducting an evidentiary hearing to make a factual record.

Mutual subsequently petitioned this Court to appeal the rulings contained in the April 27, 2006, final order, for which we granted review on November 28, 2006.

## II. Standard of Review

 This matter is before the Court as an appeal of an order which granted partial summary judgment, and denied a motion to dismiss or for summary judgment. As made clear in syllabus point one of *West Virginia Department of Transportation v. Robertson,* 217 W.Va. 497, 618 S.E.2d 506 (2005), "appellate review of a partial summary judgment order is the same as that of a summary judgment order, which is *de novo.*" A de novo standard of review also applies to a trial court's ruling on a motion to dismiss. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

## III. Discussion

██ Mutual points to six errors committed by the lower court, namely: failing to dismiss the case when the court did not have subject matter jurisdiction; failing to dismiss or grant summary judgment in Mutual's favor when Mutual was entitled to judgment as a matter of law on each of the claims asserted in Dr. Zaleski's complaint; refusing to set aside judgment when the court considered claims not asserted and granted relief not demanded in Dr. Zaleski's complaint; granting Dr. Zaleski's motion for summary judgment without procedural due process; and for concluding that Mutual is a quasi-public entity or state actor for purposes of due process analysis. Agreeing with the circuit court's assessment that the issue central to disposition of the competing motions is whether Mutual is a state actor, we first review the lower court's conclusion that Mutual is a quasi-public agency.

Mutual continues to maintain that it is a private insurer that owes its policyholders no greater procedural safeguards than those required of any other private medical malpractice insurer. Mutual bases its contention on the express language of the statute providing

the mechanism for the establishment of "a domestic, private, nonstock, nonprofit corporation," which during "its existence . . . is not and may not be considered a department, unit, agency, or instrumentality of the state for any purpose." W.Va.Code § 33–20F–4(a) and (b).

■ We addressed the issue of when an entity is considered a "state actor" in the context of governmental immunity in *Hope Natural Gas Company v. West Virginia Turnpike Commission,* 143 W.Va. 913, 105 S.E.2d 630 (1958), and observed that "whether a . . . body . . . created by the state is in truth and effect a part of the state, all of the features or characteristics must be considered and consequently each case must rest upon the provisions of the entity's own creation." *Id.* at 928, 105 S.E.2d at 639. In *Ohio Valley Contractors v. Board of Education,* 170 W.Va. 240, 293 S.E.2d 437 (1982), we summarized those features or characteristics identified in our case law which are indicative of an entity being a state actor as:

"whether the body functions statewide; whether it does the State's work; whether it was created by an act of the Legislature; whether it is subject to local control; and its financial dependence on State coffers." *Id.* at 241, 293 S.E.2d at 438 (internal citations omitted). It clearly is not necessary for an entity to be a political subdivision of the state, a state agency, or a purely public corporation to be found to be a state actor for due process purposes. As we held in syllabus point eight of *Queen v. West Virginia University Hospitals, Inc.,* 179 W.Va. 95, 365 S.E.2d 375 (1987), "[a]ll that is necessary to determine if an entity is a state actor for due process purposes is to evaluate the nature and extent of state involvement so as to determine if its actions are fairly attributable to the state."

The lower court grounded its conclusion that Mutual is a state actor on the legislative findings and purposes of the enabling statute, West Virginia Code § 33–20F–2 (2003) (Repl.Vol.2006).[7] In this regard, the Sep-

7. West Virginia Code § 33–20F–2 in its entirety provides:

(a) The Legislature finds that:

(1) There is a nationwide crisis in the field of medical liability insurance;

(2) Similar crises have occurred at least three times during the past three decades;

(3) Such crises are part of a naturally recurring cycle of a hard market period, when medical professional liability coverage is difficult to obtain, and a soft market period, when coverage is more readily available;

(4) Such crises are particularly acute in this state due to the small size of the insurance market;

(5) During a hard market period, insurers tend to flee this state, creating a crisis for physicians who are left without professional liability coverage;

(6) During the current crisis, physicians in West Virginia find it increasingly difficult, if not impossible, to obtain medical liability insurance either because coverage is unavailable or unaffordable;

(7) The difficulty or impossibility of obtaining medical liability insurance may result in many qualified physicians leaving the state;

(8) *Access to quality health care is of utmost* importance to the citizens of West Virginia;

(9) A mechanism is needed to provide an enduring solution to this recurring medical liability crisis;

(10) A physicians' mutual insurance company or a similar entity has proven to be a successful mechanism in other states for help-

ing physicians secure insurance and for stabilizing the insurance market;

(11) There is a substantial public interest in creating a method to provide a stable medical liability market in this state;

(12) The state has attempted to temporarily alleviate the current medical crisis by the creation of programs to provide medical liability coverage through the Board of Risk and Insurance Management;

(13) The state-run program is a substantial actual and potential liability to the state;

(14) There is substantial public benefit in transferring the actual and potential liability of the state to the private sector and creating a stable self-sufficient entity which will be a source of liability insurance coverage for physicians in this state;

(15) A stable, financially viable insurer in the private sector will provide a continuing source of insurance funds to compensate victims of medical malpractice; and

(16) Because the public will greatly benefit from the formation of a physicians' mutual insurance company, state efforts to encourage and support the formation of such an entity, including providing a low-interest loan for a portion of the entity's initial capital, is in the clear public interest.

(b) The purpose of this article is to create a mechanism for the formation of a physicians' mutual insurance company that will provide:

(1) A means for physicians to obtain medical liability insurance that is available and affordable; and

tember 22, 2005, order of the lower court contained the following reasons for finding a sufficient nexus between the state and Mutual in order to conclude that Mutual is a quasi-public entity:

1. There is a recognized substantial public interest in providing access to quality health care to the citizens of West Virginia. See W.Va.Code § 33–20F–2(a)(8);

2. There is a recognition that persons who suffer injuries as a result of medical professional liability must be adequately compensated. See W.Va.Code § 33–20F–2(b)(2);

3. Access to quality health care is inextricably intertwined with affording the physicians the opportunity to obtain medical liability insurance. See W.Va.Code § 33–20F–2(a)(7);

4. The State of West Virginia attempted to alleviate the current medical liability crisis by providing medical liability coverage through an exclusively State-run program (Board of Risk and Insurance Management.) See W.Va.Code § 33–20F–2 (a)(1)(2)(12).

5. The state-run program represented a substantial actual and potential liability to the state which could be addressed by transferring this actual and potential liability to the private sector and creating a stable self-sufficient entity which will be a source of liability insurance coverage for physicians in this state and consequently achieving substantial public benefit. See W.Va.Code § 33–20F–2(a)(14); and

6. The citizens of the State of West Virginia will greatly benefit from the formation of a Physician's Mutual Insurance Company, justifying the efforts of the State of West Virginia to encourage and support the formation of a private sector entity, including providing a low-interest loan for a portion of the private entity's initial capital. See West Virginia Code § 33–20F–2(a)(16).

We agree with the lower court's analysis that the relevant statutory factors surrounding the creation of Mutual weigh in favor of Mutual being a quasi-state entity rather than a private company for due process purposes. The analysis establishes that Mutual came into being due to an act of the Legislature and is a body which functions statewide in carrying out a significant public purpose. Additionally, state money[8] in the form of a loan from the Tobacco Settlement Medical Trust Fund was provided to promote the formation of Mutual because of the "clear public interest" involved. W.Va.Code § 33–20F–2(a)(16). There is no question that the Legislature is enjoined from providing public funds to a purely private company according to the provisions of West Virginia Constitution Article X, § 6.[9] *See State ex rel. West Virginia Citizens Action Group v. West Virginia Economic Development Grant Committee,* 213 W.Va. 255, 276, 580 S.E.2d 869, 890 (2003). Accordingly, we hold that the West Virginia Physicians' Mutual Insurance Company formed in consonance with the provisions of Article 20F, Chapter 33 of the West Virginia Code is a state actor for due process purposes. We proceed to determine whether Mutual's decisions not to renew insurance policies are subject to due process review.

■ As recognized by the court below, the constitutional protection of due process is triggered when there is state action that affects an individual's liberty[10] or property interest. Syl. Pt. 1, *Waite v. Civil Service Commission,* 161 W.Va. 154, 241 S.E.2d 164 (1977). For due process purposes, "[a] 'prop-

---

(2) Compensation to persons who suffer injuries as a result of medical professional liability as defined in subsection (d), section two [§ 55–7B–2], article seven-b, chapter fifty-five of this code.

8. The Legislature made money from the West Virginia Tobacco Settlement Medical Trust Fund available to promote the creation of Mutual "for the company's use as initial capital and surplus." W.Va.Code § 33–20F–7(a).

9. Article ten, section six of the West Virginia Constitution states, in part: "The credit of the state shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the state ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person."

10. No claim of a liberty interest was raised in this case.

erty interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings." *Id.* at Syl. Pt. 3, 241 S.E.2d 164. We further explained in syllabus point six of *State ex rel. Anstey v. Davis*, 203 W.Va. 538, 509 S.E.2d 579 (1998), that

> [t]o have a property interest, an individual must demonstrate more than an abstract need or a desire for it. He must instead have a legitimate claim of entitlement to it under state or federal law. Additionally, the protected property interest is present only when the individual has a *reasonable* expectation of entitlement deriving from the independent source.

(Emphasis in original).

The lower court determined that Dr. Zaleski had a reasonable expectation of entitlement to continued liability insurance coverage, based on the following language of West Virginia Code § 33–20F–9(f)(4),[11] which was in effect at the time the decision not to renew was made:

> (f) Notwithstanding the provisions of subsection (b), (c) or (e) of this section, the company may:
>
> . . . . .
>
> (4) *Except with respect to policies transferred from the Board of Risk and Insurance Management under this section*, refuse to provide insurance coverage for individuals whose prior loss experience or current professional training and capability are such that the physician represents unacceptable risk of loss if coverage is provided.

(Emphasis added). The lower court observed that the record before it did not demonstrate any current loss experience or current lack of professional training or capability. The court then found that Dr. Zaleski had a property interest with a legitimate claim of entitlement to continued professional liability coverage because the terms of this statute excluded the doctor's *prior* loss

experience from consideration in risk assessment for policy renewal purposes.

■ While we concur in the lower court's conclusion that Dr. Zaleski has a property interest in continued malpractice coverage, we find the basis relied on less than convincing. First, the record does not unequivocally establish what claims were considered by Mutual's underwriting committee to arrive at the non-renewal decision in Dr. Zaleski's case. Second, under the statutory design, all physicians in the state would have a property interest in continued professional liability insurance coverage in order to fully and responsibly carry out their professional work. While doctors have no absolute right to be insured by Mutual, once a doctor has been afforded the benefit of insurance coverage by Mutual as a quasi-state entity, any action by Mutual to change or remove the benefit cannot be arbitrarily made. *See State ex rel. Bowen v. Flowers*, 155 W.Va. 389, 393, 184 S.E.2d 611, 614 (1971) (Having furnished a contract or privilege, "the state cannot act arbitrarily, either substantively or procedurally."). This is in keeping with past decisions in which we have commonly required the application of due process standards in proceedings where governmental entities have deprived a person of a property right. *See North v. W.Va. Bd. of Regents*, 160 W.Va. 248, 255–56, 233 S.E.2d 411, 416–17 (1977) (listing illustrative cases). Accordingly we find that physicians who have been afforded the benefit of medical liability insurance coverage through West Virginia Physicians' Mutual Insurance Company are entitled due process protection in seeking review of any non-renewal decision made by the company. Thus we affirm the decision of the lower court regarding Mutual being a quasi-state entity whose non-renewal decisions are subject to a review process which comports with due process principles.

Mutual maintains on appeal that Dr. Zaleski was afforded procedural due process in the review it provided the doctor. In the alternative, Mutual argues that the method by which review of its non-renewal decisions is achieved is already established in West Virginia Code §§ 33–20C–1 to 5, dealing with

---

**11.** *See* 2003 W.Va. Acts c. 147.

cancellation and non-renewal of malpractice insurance policies.[12] The review mechanism Mutual suggests is available under Article 20C is review by the Insurance Commissioner. We agree with the lower court's rejection of both of these arguments.

▆▆▆▆ The provisions of Article 20C of Chapter 33 unambiguously set forth the extent of the Insurance Commissioner's involvement with review of decisions concerning cancellation and non-renewal of malpractice policies. Only section four, subsection (a) of this article specifically refers to treatment of policy non-renewals, and it is limited to defining the required notice insurers must provide the insured. According to the statutory scheme, the Insurance Commissioner only has hearing and review obligations when a malpractice policy *cancellation* is contested. By the clear and unambiguous terms of the statute, the Legislature chose not to involve the Insurance Commissioner in the review process of non-renewal decisions. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). As further explained in *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996), "[i]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Id.* at 546–47, 474 S.E.2d at 476–77 (citations omitted).

▆▆▆▆ The lower court ultimately decided that the review process Mutual must provide parties aggrieved by its non-renewal decisions is the same procedural mechanism available to a party aggrieved by a decision of the Insurance Commissioner,[13] with appeal of the outcome of that hearing process being to the circuit court where the insured resides or the Circuit Court of Kanawha County. We find this procedure to be overly detailed and burdensome and beyond the dictates of due process. Such stringent requirements go beyond what this Court has applied to situations where property interests, such as completing education at a state-supported school of higher education, are entitled substantial due process protection. From that standpoint, we have said that due process is met when an aggrieved party is afforded:

> a formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his accusers, and to present evidence on his own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings.

*North*, 160 W.Va. at 257, 233 S.E.2d at 417. *See also Jordan v. Roberts*, 161 W.Va. 750, 755–56, 246 S.E.2d 259, 262–63 (1978) (application of same standards in cases involving suspension of drivers' licenses.). It is clear from the statutory purposes for promoting the creation of Mutual that physicians also have a substantial property interest in the availability of medical liability insurance since it directly effects a doctor's ability to pursue his profession in this state. Therefore, being a state actor for due process purposes, West Virginia Physicians' Mutual Insurance Company is required to make available to parties affected by its non-renewal decisions a review process that minimally includes: notice of the non-renewal which conforms with the requirements of West Virginia Code § 33–20C–4(a) and which includes the reasons for non-renewal; hearing before an unbiased hearing examiner; reasonable time in which to prepare to rebut the charges; opportunity to have retained

---

**12.** This argument also has bearing on Mutual's claim that the lower court lacked subject matter jurisdiction. In essence, Mutual maintains that the circuit court could not assert jurisdiction until after Dr. Zaleski exhausted his administrative remedies through the Insurance Commission. As will become apparent in our discussion, this claim has no merit since we conclude that the Legislature chose not to impose the duty of review of non-renewal decisions on the Insurance Commissioner.

**13.** *See* W.Va.Code § 33–2–13.

counsel at any hearings on the charges; opportunity to present relevant evidence which includes calling and cross-examining witnesses; and preservation of an adequate record of the review proceedings.[14] Discovery, if any, should be governed by the standards set forth in *State ex rel. Hoover v. Smith*, 198 W.Va. 507, 482 S.E.2d 124 (1997), wherein we said that "[g]enerally, there is no constitutional [due process] right to pre-hearing discovery in administrative proceedings... [, but it must be permitted when] 'refusal to grant discovery would so prejudice the party as to amount to a denial of due process.'" *Id.* at 512, 482 S.E.2d at 129 (citations omitted.).

■ While we largely agree with the conclusions reached by the court below, we disagree with and reverse the lower court's decisions to reinstate insurance coverage and allow this case to proceed in that tribunal. Typical treatment of such cases was summarized in *White v. Barill*, 210 W.Va. 320, 557 S.E.2d 374 (2001), as follows:

> In Syllabus Point 4 of *Barazi v. West Virginia State College*, 201 W.Va. 527, 498 S.E.2d 720 (1997), this Court held that "'[t]he proper remedy for reversible due process procedural defects in administrative proceedings is to remand the case to the appropriate tribunal with directions to order the administrative institution to remedy the defect.' Syl. Pt. 4, *Clarke v. West Virginia Bd. of Regents*, 166 W.Va. 702, 279 S.E.2d 169 (1981)." Thus, we find that the circuit court should have remanded this case to the Commission to address White's procedural due process rights.

Id. at 323, 557 S.E.2d at 377. Accordingly we remand this case with direction to the circuit court to remand the matter to Mutual for conduct of a review process on the non-renewal decision which conforms with the standards set forth in this opinion.

## IV. Conclusion

In summary, we affirm the lower court's grant of partial summary judgment to Dr. Zaleski on state action grounds, but reverse

the lower court's denial of Mutual's dismissal motion and order to reinstate insurance coverage. Therefore, the case is remanded to the Circuit Court of Ohio County with directions for that court to: (1) remand the question of non-renewal to Mutual for further hearing in conformity with this opinion, and (2) conduct such further proceedings not inconsistent with this opinion as may be required, including the resolution of any disputes which may arise in the course of the Mutual hearing on non-renewal. Thus, for the reasons set forth, the final order of the Ohio County Circuit Court entered on April 27, 2006, is affirmed, in part, reversed, in part, and the case is remanded with directions.

Affirmed, in part; reversed in part; and remanded, with directions.

---

**14.** Although review of non-renewal decisions is warranted under due process principles, there is no question that Mutual has the authority to

refuse to renew medical liability policies as this decision is reserved to Mutual by statute. W.Va. Code § 33–20F–9.